UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| WILLIAM JANACEK, Individually, and On Behalf of All Others Similarly Situated, as well as on Behalf of the General Public and Acting on the Public Interest, | ) ) ) ) ) | CIVIL ACTION NO. |
|  | ) | 3:07-CV-1996-G |
| Plaintiff, | ) ) | **ECF** |
| VS. | ) ) |  |
| MICHAEL O. LEAVITT, Secretary, United States Department of Health and Human Services, ET AL., | ) ) ) ) |  |
| Defendants. | ) ) |  |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are the following motions: (1) the motion of the defendants,

Michael O. Leavitt, Secretary of the United States Department of Health and Human

Services ("the Secretary"), and Kerry Weems, Acting Administrator of the Centers for

Medicare and Medicaid Services ("Weems"), to dismiss the complaint of the plaintiff,

William Janacek ("Janacek" or "the plaintiff"); (2) the motion of the defendants,

Martha P. Mahaffey, Joy Bahnemann, and Kendall R. Walker (collectively, the

"Contractor Defendants"), to dismiss the complaint of the plaintiff; (3) the motion of

the plaintiff for class certification; and (4) the motion of the defendants for leave to

file supplemental authority. For the reasons set forth below, Leavitt's and Weems'

motion to dismiss is granted; Mahaffey's, Bahnemann's, and Walker's motion to

dismiss is granted; Janacek's motion for class certification is denied; and the motion

for leave to file supplemental authority is granted.

## I. BACKGROUND

The plaintiff operates an independent diagnostic testing facility that

participates in the Medicare/Medicaid programs. *See* William Janacek's Original

Complaint - Class Action and Application for Injunctive Relief ("Complaint") ¶ 2.

The defendant Weems is the acting Administrator of the Centers for Medicare and

Medicaid Services ("CMS"). *Id*. ¶ 4. The CMS is a governmental agency within the

United States Department of Health and Human Services ("HHS") that is

responsible for administering the Medicare and Medicaid programs. *Id*. The

defendant Mahaffey is the President of Trailblazer Health Enterprises, L.L.C.

("Trailblazer"). *Id.* ¶ 5. Trailblazer is under contract to help the federal government

administer financial aspects of Part A and Part B of the Medicare program. *Id*.

On April 23, 2007, Trailblazer notified Janacek of an overpayment of

$748,225.33 in Medicare benefits to his facility. *Id*. ¶ 22. Trailblazer's

determination of the overpayment was based upon statistical sampling in which the

actual amount of the overpayment sample was $3,990.43. *Id*. To reduce the alleged

overpayment, the CMS withheld from Janacek Medicare payments of $11,726.17,

which were held in escrow by Trailblazer. *Id*. ¶ 23. Trailblazer demanded that

Janacek repay $736,449.16 and notified him of his right to appeal under the

Medicare Act. *Id*. ¶ 22.

Also on April 23, 2007, Trailblazer notified Janacek of an additional

overpayment in the amount of $57,126.79. *Id*. ¶ 24. Trailblazer's determination of

this overpayment was based on a statistical sampling in which the actual amount of

the overpayment sample was $3,485.91. *Id*. To reduce the alleged overpayment, the

CMS withheld Medicare payments of $1,424.75, which were held in escrow by

Trailblazer. *Id*. ¶ 25. Trailblazer demanded that Janacek repay $55,702.04 and

notified him of his right to appeal under the Medicare Act. *Id*. ¶ 24.

A. Administrative Appeals under the Medicare Act

The Medicare Act's administrative process contains five steps to appeal a

contractor's initial determination of Medicare benefits. The first level of appeal is a

redetermination by the same contractor who made the initial determination. *See* 42

C.F.R. § 405.940. After the redetermination, the Medicare provider may request a

reconsideration by a Qualified Independent Contractor ("QIC"). *See* 42 C.F.R.

§ 405.960. If the provider is dissatisfied with the QIC's reconsideration, it may

request a hearing before an administrative law judge ("ALJ"). *See* 42 C.F.R.

§ 405.1000. The provider may subsequently request that the Medicare Appeals Council ("MAC") review the ALJ decision. *See* 42 C.F.R. § 405.1100. As the fifth and final step of the appeals process, the provider may challenge the contractor's initial determination of Medicare benefits in federal district court. *See* C.F.R. §§ 405.1130, 405.1136.

### B. Janacek's Administrative Appeal

On May 31, 2007, Janacek filed two requests for redetermination with Trailblazer. Complaint ¶ 28. Trailblazer denied Janacek's requests for redetermination in July and August 2007. *See* Declaration of Shawn Schuh ¶¶ 6, 7, *attached to* Appendix to Defendants' Motion to Dismiss Plaintiff's Complaint and Supporting Brief ("Motion to Dismiss") *as* Exhibit A. After Trailblazer's denial, Janacek filed this suit on November 30, 2007. Subsequently, on January 24, 2008, Janacek's counsel filed a request for reconsideration with the appropriate QIC. *Id*. ¶ 4.

The plaintiff alleges violations of his constitutional rights by the defendants relating to what the plaintiff calls "the statutory prohibition on recoupment of Medicare overpayments during a pending administrative appeal." Complaint ¶ 1. According to the plaintiff, the defendants have ". . . ignored the Congressional directive, violated the prohibition, and illegally recouped Plaintiff's payments and applied them to reduce a contested overpayment." *Id.* Specifically, the plaintiff

alleges a "clandestine policy that is contrary to the statutory limitation on recoupment," a policy governed by 42 U.S.C. § 1395ddd. *Id*. Additionally, the plaintiff claims that the "[d]efendants have instructed unknown and unnamed officials, employees, and agents to recoup Medicare overpayments" contrary to the statutory limitation. *Id.* ¶ 52. The plaintiff avers that the defendants have violated his and similarly situated providers' due process rights under the Fifth and Fourteenth Amendments, as a result of which he moves for class certification. *Id*. ¶¶ 1, 13-14; Plaintiff's Motion for Class Certification and Brief in Support of Motion for Class Certification. Moreover, the plaintiff alleges, the defendants' conduct amounts to an unlawful taking under the Fifth and Fourteenth Amendments, as well as Article 1, § 19 of the Texas Constitution. Complaint ¶ 41.

The plaintiff seeks an order from this court directing the defendants to "turn over all illegally recouped payments." *Id.* ¶ 59. He seeks damages, including punitive and exemplary damages, for the defendants' alleged violations of his constitutional rights. *Id.* ¶ 54. Additionally, the plaintiff seeks injunctive relief, preliminary and permanent, prohibiting the defendants "from further violation of 42 U.S.C. § 1395ddd by illegally recouping Medicare payments." *Id.* ¶ 59. The plaintiff also requests a declaratory judgment that defendants have "illegally recouped payments in violation of 42 U.S.C. § 1395ddd from Plaintiff and other similarly situated healthcare providers participating in the Medicare program." *Id.* ¶ 68.

The defendants Leavitt and Weems move to dismiss the plaintiff's complaint for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) and for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6). Specifically, these defendants argue that the plaintiff lacks standing, as he "has not shown that a violation of 42 U.S.C. § 1395ddd has taken place, since by his own admission, he had not sought reconsideration for the determination of an overpayment at the time of recoupment." Motion to Dismiss at 9. Furthermore, these defendants maintain, sovereign immunity serves as a bar to this court's subject matter jurisdiction. *Id.* at 11. Finally, these defendants argue, the plaintiff's claims arise under the Medicare Act and are therefore subject to the administrative appeals process set forth in 42 U.S.C. § 405(h). *Id.* at 14. Due to the availability of such an appeals process, these defendants contend, the plaintiff cannot assert a claim under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Id.* at 17. The contractor defendants, Mahaffey, Bahnemann, and Walker, move to dismiss on the same grounds, with the exception of sovereign immunity.

## II. ANALYSIS

### A. Standard for Rule 12(b)(1) Motion to Dismiss

Rule 12 (b)(1) of the Federal Rules of Civil Procedures authorizes the dismissal of a case for lack of jurisdiction over the subject matter. *See* FED. R. CIV. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction

must be considered by the court before any other challenge because "the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted); see also *Ruhrgas AG v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception") (citation and internal quotation marks omitted). On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *MD Physicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson*, 645 F.2d at 413). A party who believes jurisdiction is lacking may challenge the court's authority to decide the case by filing a motion to dismiss pursuant to Rule 12(b)(1). Once jurisdiction is challenged, the burden rests upon the party seeking to invoke the court's jurisdiction to prove that jurisdiction is proper. *Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir. 1995), *cert. denied*, 516 U.S. 1071

(1996). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Federal Election Commission*, 138 F.3d 144, 151 (5th Cir. 1998) (internal quotations omitted).

## B. "Arising Under" the Medicare Act

The Supreme Court has found that "[42 U.S.C. §] 1395ii makes [42 U.S.C.] § 405(h) applicable to the Medicare Act 'to the same extent as' it applies to the Social Security Act." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 9 (2000). Section 1395ii, in its incorporation of Section 405(h), states that "any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively." Section 405(h), as modified by Section 1395ii, provides:

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

The Supreme Court has found that "[t]he third sentence of 42 U.S.C. § 405(h) . . . provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for

judicial review for all claims arising under the Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984) (footnote, brackets, and internal quotation marks omitted).

Under 42 U.S.C. § 405(g), judicial review is only allowed "after the Secretary issues a 'final decision' on the plaintiff's claims." See *Griego v. Leavitt*, 2008 WL 2200052, at *3 (N.D. Tex. May 16, 2008) (Fitzwater, C.J.).[1] "[O]nly after the individual claimant has pressed his claim through all designated levels of administrative review" is the Secretary considered to have issued a "final decision." *Ringer*, 466 U.S. at 606.

Janacek alleges that this the court has jurisdiction pursuant to 28 U.S.C. § 1331, as well as under *Bivens*. Complaint ¶ 9. However, "*Bivens* does not provide an independent source of subject matter jurisdiction apart from § 1331." *Griego*, 2008 WL 2200052, at *3. Therefore, § 1331 provides the sole source of subject matter jurisdiction for Janacek's claims. *Id*. Thus, if Janacek's claims arise under the

_____

[1]     *Griego*, a case recently decided in this district, was the subject of a motion for leave by the defendants to file supplemental authority. *See* Motion for Leave to File Supplemental Authority in Support of Defendants' Motions to Dismiss. This court will grant the defendants' motion. While recognizing that *Griego* is not binding precedent, this court finds its reasoning sound and helpful to the evaluation of Janacek's claims. The plaintiff, responding in opposition, argues that consideration of *Griego* is unfair, as he has no chance to respond to the authority. *See* Plaintiff's Response to Defendants' Motion for Leave to File Supplemental Authority ("Supplemental Authority Response") at 2. This argument is not persuasive. Both *Griego* and this case present the same issues, and no "response" is necessary. Moreover, immediately after complaining about his inability to respond, Janacek spends nearly a page explaining why *Griego* was wrongly decided. Supplemental Authority Response at 2-3.

Medicare Act, Section 405(g) acts as a bar to this court's subject matter jurisdiction because Janacek has failed to take his claim through all levels of the Medicare Act's administrative appeals process. *Id.*

Janacek contends his claims do not arise out of the Medicare Act. Specifically he argues that because his "illegal taking claim is grounded in constitutional law, the standing and substantive basis for the action clearly [do] not 'arise under' the Medicare Act." Plaintiff's Response to Motions to Dismiss Filed by Defendants Michael O. Leavitt, Kerry Weems, Martha P. Mahaffey, Joy Bahnemann and Kendall R. Walker ("Response") at 18.

"The Supreme Court has construed the 'arising under' language of § 405(h) broadly." *Griego*, 2008 WL 2200052, at *4 (citing *Ringer*, 466 U.S. at 615). *Weinberger v. Salfi*, 422 U.S. 749 (1975), for example, involved a challenge to the constitutionality of duration-of-relationship Social Security eligibility requirements for surviving wives and stepchildren of deceased wage earners. 422 U.S. at 752-53. Construing Section 405(h), the Supreme Court found that the plaintiffs' claims arose under the Social Security Act because the Act "provides both the standing and the substantive basis for the presentation of their constitutional contentions." *Id.* at 760-61. According to the Court:

> [T]he plain words of the third sentence of § 405(h) do not
> preclude constitutional challenges. They simply require
> that they be brought under jurisdictional grants contained
> in the Act, and thus in conformity with the same standards

- 10 -

> which are applicable to nonconstitutional claims arising
> under the Act.

*Id.* at 762.

The Supreme Court has applied this same "broad test" in the context of the Medicare Act. In *Ringer,* the plaintiffs alleged that the HHS Secretary's instructions not to provide payment for a certain surgery violated constitutional due process and several statutory provisions. 466 U.S. at 610. The Court, finding it of "no importance that respondents here, unlike the claimants in *Weinberger v. Salfi,* sought only declaratory and injunctive relief and not an actual award of benefits as well," held the plaintiffs' claims arose under the Medicare Act. *Id.* at 615, 624.

The Supreme Court reiterated the broad reach of Section 405(h) in *Illinois Council*. In that case, the plaintiffs brought statutory and constitutional challenges to certain remedial regulations applied to nursing homes found to have violated requirements for Medicare payment. *Illinois Council,* 529 U.S. at 6. The Court found *Salfi* and *Ringer* to "foreclose distinctions based upon the 'potential future' versus the 'actual present' nature of the claim, the 'general legal' versus the 'fact-specific' nature of the challenge, the 'collateral' versus 'noncollateral' nature of the issues, or the 'declaratory' versus 'injunctive' nature of the relief sought." *Id.* at 13-14. Furthermore, the Court rejected "a distinction that limits the scope of § 405(h) to claims for monetary benefits." *Id.* at 14. The Court reasoned:

Insofar as § 405(h) prevents application of the "ripeness" and "exhaustion" exceptions, *i.e.*, insofar as it demands the "channeling" of virtually all legal attacks through the agency, it assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying "ripeness" and "exhaustion" exceptions case by case. But this assurance comes at a price, namely, occasional individual, delay-related hardship. In the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justified. In any event, such was the judgment of Congress as understood in *Salfi* and *Ringer*.

*Id.* at 13. For such reasons, the Court found Section 405(h) to bar federal subject matter jurisdiction over the plaintiffs' claims.

In *Griego*, a recent case from the Northern District of Texas, Chief Judge Fitzwater applied the principles of *Ringer* and *Illinois Council* to claims that HHS and Medicare contractors unlawfully attempted to withhold Medicare benefits to reduce previous overpayment. In *Griego*, the plaintiff owned a medical clinic that provided services under the Medicare program. 2008 WL 2200052, at *1. Trailblazer, the same contractor-defendant involved in the instant case, notified Griego of an overpayment to his clinic and applied a portion of Medicare benefits due to the overpayment balance. *Id.* Trailblazer denied Griego's request for redetermination. *Id.* Like Janacek in the present case, Griego filed suit in federal court and subsequently sought reconsideration by a QIC. *Id.* Griego brought claims almost

identical to those brought by Janacek against the same defendants. *Id.* at *2. Like

Janacek, Griego claimed that the defendants acted under a clandestine policy in

contravention of Section 1395ddd(f)(2)(A); that the premature recoupment of

overpaid benefits violated his due process rights under the Fifth and Fourteenth

Amendments; and that the defendants' conduct amounted to an unjust taking. *Id.*

Relying on *Ringer* and *Illinois Council*, Chief Judge Fitzwater found that Griego's

claims arose under the Medicare Act because "both the standing and the substantive

basis for the presentation of [Dr. Griego's] claim[s] is the Medicare Act." *Id.* at *6

(quoting *Illinois Council*, 529 U.S. at 12). The court declared that the plaintiff

"cannot circumvent the strictures of § 405(h) by presenting his complaint in

constitutional terms." *Id.* Importantly, the court explained:

> Dr. Griego's insistence that his suit does not attempt to
> collect Medicare benefits is also misplaced. Even if Dr.
> Griego sought only injunctive and declaratory relief, under
> *Ringer* and *Illinois Council* his claims would still arise under
> the Medicare Act. As the Court noted in *Ringer*, Dr.
> Griego's attempt to obtain injunctive and declaratory relief
> is an indirect claim for Medicare benefits, because if Dr.
> Griego is successful in obtaining this relief, he will prevent
> defendants from applying amounts withheld from present
> or future Medicare benefits payable to his clinic to reduce
> the alleged overpayment indebtedness. Dr. Griego's *Bivens*
> action seeks money damages that exceed the amounts that
> defendants have recouped or will recoup, but that
> distinction did not save the plaintiffs' complaint in *Kaiser*,
> 347 F.3d at 1112,[2] and Dr. Griego presents no reason why

---

[2]     *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1112 (9th Cir. 2003),

(continued...)

this distinction supports a different result.  In sum, Dr. Griego's suit falls squarely within the Medicare Act; therefore, the court lacks subject matter jurisdiction over this case until Dr. Griego satisfies the exhaustion requirement of § 405(g).

*Id.* (footnote not in original).

Like the plaintiffs' claims in *Salfi*, *Illinois Council*, and *Griego*, "both the standing and the substantive basis for the presentation of . . . [Janacek's] claim[s] is the Medicare Act." *Illinois Council*, 529 U.S. at 12.  Janacek has not identified any action on the part of the defendants other than premature recoupment of Medicare benefits as a basis for his constitutional claims.  Furthermore, it cannot be said that Janacek's suit does not seek the collection of Medicare benefits simply because he also seeks damages, injunctive relief, and declaratory relief.  "[I]f [the plaintiff] is successful in obtaining this relief, he will prevent defendants from applying amounts withheld from present or future Medicare benefits payable to his clinic to reduce the alleged overpayment indebtedness." *Griego*, 2008 WL 2200052, at *6.  Therefore, the court holds that all of Janacek's claims arise under the Medicare Act so that, unless an

---

[2](...continued)

applied the principles of *Heckler v. Ringer*, 466 U.S. 602 (1984), and *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000), holding "[t]he fact that the [plaintiffs] seek damages beyond the reimbursement payments available under Medicare does not exclude the possibility that their case arises under Medicare. Simply put, the type of remedy sought is not strongly probative of whether a claim falls under § 405(h)."

exception applies, the court lacks subject matter jurisdiction over this case until

Janacek has exhausted the Medicare Act's administrative appeals process.

### C.  Judicial Waiver of the Exhaustion Requirement under *Mathews*?

Janacek also claims jurisdiction pursuant to the "collateral Constitutional claim

exception to the Medicare exhaustion requirement" established by *Mathews v. Eldridge*,

424 U.S. 319 (1976).  Complaint ¶ 10.  The *Mathews* Court found two components

for obtaining judicial review under § 405(g).  "[T]he requirement that a claim for

benefits shall have been presented to the Secretary" is a "nonwaivable element" of §

405(g).  *Id.* at 328.  However, "the requirement that the administrative remedies

prescribed by the Secretary be exhausted" is a "waivable element."  *Id.*  With regard

to the waivable element, the *Mathews* Court stated:

> [T]he Secretary may waive the exhaustion requirement if
> he satisfies himself, at any stage of the administrative
> process, that no further review is warranted either because
> the internal needs of the agency are fulfilled or because the
> relief that is sought is beyond his power to confer . . .
> [U]nder § 405(g) the power to determine when finality has
> occurred ordinarily rests with the Secretary since ultimate
> responsibility for the integrity of the administrative
> program is his.  But cases may arise where a claimant's
> interest in having a particular issue resolved promptly is so
> great that deference to the agency's judgment is
> inappropriate.

*Id.* at 330.

In determining whether judicial waiver is appropriate, courts have read

*Mathews* to require consideration of three factors:  "(1) whether the claim is collateral

to a demand for benefits; (2) whether exhaustion would be futile; and (3) whether the plaintiffs would suffer irreparable harm if required to exhaust their administrative remedies before obtaining relief." *Abbey v. Sullivan*, 978 F.2d 37, 44 (2d Cir. 1992). Courts should also keep in mind that "[e]xhaustion is the rule, waiver the exception ... because of a variety of prudential and separation-of-powers concerns. *Id.* (internal citations omitted).

### 1. *Collateral Claim*

"The Supreme Court has recognized that the constitutional tenor of a claim is not a determinative factor in deciding whether a claim is collateral." *Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (per curiam). In *Affiliated*, the plaintiff brought suit against the HHS Secretary, among others, claiming there was a conspiracy to violate the plaintiff's due process and equal protection rights under the Constitution through the improper and arbitrary enforcement of Medicare regulations based on race. *Id.* at 284. The court held:

> [The plaintiff's] claim is not a collateral claim for purposes of exhaustion. Although its claim is framed in constitutional terms and seeks compensatory and punitive damages, [the plaintiff] also seeks to rescind the termination of its provider status and to halt the suspension of its Medicare payments. Such relief is unquestionably administrative in nature.

*Id.* at 285.

In *Griego*, a case with a fact pattern almost identical to that of the present case, this court found that the plaintiff's complaint was "fundamentally a claim for Medicare benefits and thus [was] not collateral to such a claim." 2008 WL 2200052, at *10. Similarly, Janacek's claim for damages is an indirect suit for Medicare benefits. "Although [the plaintiff] sues for money damages rather than Medicare benefits, the money damages he seeks would compensate him for Trailblazer's premature recoupment, which is a process of withholding present or future Medicare benefits to reduce [the plaintiff's] overpayment indebtedness." *Id.* Similarly, Janacek's requests for injunctive and declaratory relief are indirect claims for Medicare benefits. "[I]f [the plaintiff] succeeds in obtaining injunctive or declaratory relief, defendants would be prevented from recouping the alleged overpayment, thus giving [the plaintiff] a greater entitlement to present or future Medicare benefits." *Id.* Therefore, it is clear that Janacek's complaint is not, in the words of *Abbey*, 978 F.2d at 44, "collateral to a demand for benefits."

## 2. *Is Exhaustion Futile?*

Janacek repeatedly argues that there is no administrative remedy available, suggesting that requiring him to channel his claims through the administrative appeals process would be futile. *See* Response at 20-21. Additionally, Janacek argues that the decision to recoup overpayments is "not an 'initial determination' and not appealable." *Id.* at 20. The court disagrees.

> "Although the administrative regulations do not explicitly provide that "recoupment" is an "initial determination" that is appealable under [42 U.S.C.] § 1395ff, in listing the "initial determinations" that *are* appealable, 42 C.F.R. § 405.924(b)(12) (2007) broadly includes "[a]ny other issues having a present or potential effect on the amount of benefits to be paid under Part A or Part B of Medicare[.]"

*Griego*, 2008 WL 2200052, at *7 (emphasis in original). "Recoupment" is defined as "[t]he recovery by Medicare of any outstanding Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness." 42 C.F.R. § 405.370. Recoupment, thus, "would certainly have a 'present or potential effect on the amount of benefits to be paid'" to Janacek's facility. *Griego*, 2008 WL 2200052, at *7. Therefore, the court finds that the recoupment decision is an initial determination which is appealable. In turn, because "the policies underpinning the channeling requirement are served by [the plaintiff's] proceeding through the administrative appeals process," requiring Janacek to channel his claims through the entire administrative proceedings would not be futile. *Id.* at *10. "This is true irrespective of his prospects for success on appeal." *Id.*

### 3. *Irreparable Harm*

Janacek also argues that if the defendant's actions are not "immediately restrained," he will be "forced to shut down the essentially Medicare/Medicaid-only provider, its employees will lose their jobs and, most importantly, the medically fragile patients who depend upon Plaintiff will be at serious risk of not receiving care

to which they are entitled." Complaint ¶ 34. Janacek's claims of irreparable injury precisely mirror those presented by the plaintiff in *Griego*. *See* 2008 WL 2200052, at *11. Under the reasoning of *Griego*, summarized below, the court finds that requiring Janacek to exhaust his administrative remedies will not cause him irreparable harm.

"The irreparable injury factor does not account for past injuries but only considers those harms that will ensue from requiring [the plaintiff] to exhaust his administrative remedies." *Id.* at *11 (citing *Kaiser*, 347 F.3d at 1115). Under both parties' construction of § 1395ddd(f)(2)(A), a Medicare contractor may legally recoup a benefit overpayment after the reconsideration has been rendered, even though such recoupment decision may later be found to be incorrect. *See* Response at 6-8; Motion to Dismiss at 5. Thus, "[e]ven if [the plaintiff] were immediately successful in this suit in obtaining an injunction restraining defendants from recouping the alleged overpayment, the injunction would bind defendants only until a reconsideration was rendered, because [the plaintiff] does not in his complaint challenge the underlying overpayment determination." *Griego*, 2008 WL 2200052, at *11. It therefore follows that, in order for Janacek to forego § 405(g)'s channeling requirement under the irreparable injury factor of *Mathews*, the irreparable injury would have to be "caused by having the alleged overpayment . . . recouped between the present and the date on which the reconsideration is rendered." *Id.*

According to Janacek's response to the defendants' motions to dismiss, his lawyer filed the request for reconsideration with the QIC "[o]n or about January 22, 2008." Response App. at Ex. A. The law states that, absent an exception, the QIC must render a reconsideration "[w]ithin 60 calendar days of the date the QIC receives a timely filed request for reconsideration[.]" 42 C.F.R. § 405.970. Thus, the QIC has likely already rendered a reconsideration, and requiring Janacek to exhaust his administrative appeals will not cause him irreparable injury. "[E]ven if the QIC has not yet rendered a reconsideration, [the plaintiff] has provided no reason why the QIC reviewing his reconsideration request would not issue its decision within a reasonable time." *Griego*, 2008 WL 2200052, at *11. For these reasons, the court concludes that Janacek has not shown that his exhaustion of administrative appeals will cause him irreparable injury.

Furthermore, the sorts of injuries claimed by Janacek -- even if the court assumes *arguendo* that the exhaustion requirement would cause them to occur -- are not irreparable. See *id.* Concerning Janacek's claim that he would be forced to shut down his facility, such injury is "not necessarily 'irreparable,' considering the risk known to the health care provider when it enters the Medicare program." *Manakee Professional Medical Transfer Service, Inc. v. Shalala*, 71 F.3d 574, 581 (6th Cir. 1995) ("[T]he companies' allegations of financial doom, even if they were substantiated, which they are not, would not necessarily warrant judicial waiver of the exhaustion

requirement."). Concerning Janacek's claim that patients would not receive care were he forced to shut down his facility, the Fifth Circuit Court of Appeals has rejected such an argument when presented by a healthcare provider. See *Affiliated*, 164 F.3d at 286 ("[I]t seems highly unlikely that the termination of [the plaintiff's] provider status would result in a measurable loss of home-based health care in three separate counties. Similarly, it seems unreasonable to conclude that [the plaintiff's] patients will be deprived of adequate home-based health care if [the plaintiff] is forced out of business."); see also *Griego*, 2008 WL 2200052, at *12. Therefore, Janacek has failed to show he will be irreparably injured if required to exhaust his administrative appeals, and, consequently, he has failed to establish entitlement to a judicial waiver of § 405(g)'s exhaustion requirement as set forth in *Mathews.*

C. Jurisdiction under Sections 405(g) and (h)

By repeatedly arguing that there is no administrative remedy under the Medicare Act available for his claims, Janacek implicitly claims jurisdiction pursuant to the exception to § 405 (g) and (h) as set out in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). *See* Response at 20-21. According to the *Illinois Council* court, the *Michigan Academy* exception only applies when the "application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Illinois Council*, 529 U.S. at 19. Put simply, "if requiring [the plaintiff] to channel his claims through the administrative appeals process 'will amount to the

practical equivalent of a total denial of judicial review,' he may bring suit under

§ 1331 despite his failure to exhaust." *Griego*, 2008 WL 2200052, at *7 (quoting

*Illinois Council*, 529 U.S. at 20) (internal citations omitted).

Janacek's claim of no administrative remedy is without merit because, as the

court discussed above, the contractor's recoupment decision is an "initial

determination" under 42 U.S.C. § 1395ff and is appealable. Thus, an administrative

remedy is available. Additionally, were the court to assume *arguendo* that

administrative relief is not available for recoupment that violates § 1395ddd(f)(2)(A),

*Michigan Academy* still would not apply to Janacek's complaint. In *Griego*, the court

stated:

> A plaintiff whose legal claims are outside the scope of the
> administrative appeals process must wait until the judicial
> forum to prosecute the claims, and this delay does not
> permit him to circumvent § 405(g)'s channeling
> requirement.

*Id.* at *8. When determining that the *Michigan Academy* exception was unavailable for

Griego's claims, the court again relied on the Supreme Court's reasoning in *Illinois*

*Council*:

> The fact that the agency might not provide a hearing for
> [a] *particular contention*, or may lack the power to provide
> one, is beside the point because it is the "action" arising
> under the Medicare Act that must be channeled through
> the agency. After the action has been so channeled, the
> court will consider the contention when it later reviews the
> action.

- 22 -

> And a court reviewing an agency determination under
> § 405(g) has adequate authority to resolve any statutory or
> constitutional contention that the agency does not, or
> cannot, decide[.]

*Id*. (emphasis in original) (quoting *Illinois Council*, 529 U.S. at 23-24).

Therefore, even if Janacek's contention were correct that there is no administrative relief available for his claims, he has failed to provide "any argument that establishes why he would not be able to present them in federal district court after exhausting his administrative appeals for Trailblazer's alleged overpayment determination." *Griego.* 2008 WL 2200052 at *8. For these reasons, the *Michigan Academy* exception is unavailable to Janacek.

### D. Clandestine Agency Policy Exception

Janacek also claims jurisdiction pursuant to the "clandestine agency policy exception to the Medicare exhaustion requirement" established by *Bowen v. City of New York*, 476 U.S. 467 (1986). Complaint ¶ 11. Janacek challenges "recouped Medicare payments imposed by Defendants under a clandestine policy that is inconsistent with and violates the statutory prohibition against recoupment in 42 U.S.C. §1395ddd." *Id.* However, Janacek's complaint is distinguishable from *City of New York*.

The plaintiffs' complaint in *City of New York* was essentially "that [HHS] had adopted an unlawful, unpublished policy under which countless deserving claimants were denied benefits." 476 U.S. at 473. Because "the policy was never published in

the Federal Register as required by the Administrative Procedure Act, but was

nonetheless implemented," the plaintiffs alleged a violation of their due process

rights.  *Id.* at 473-74.  The Court found that the *Mathews* factors called for a judicial

waiver of the § 405(g) exhaustion requirement.  *Id.* at 483-84.

However, in *Griego*, considering the same "clandestine agency" argument, the

court distinguished the claims of the *City of New York* plaintiffs from those of Griego:

> [T]he [*City of New York*] plaintiffs attacked the process by
> which the clandestine rule was formulated, not the agency's
> decision to deny them Medicare benefits based on the
> unpublished rule.  Conversely, Dr. Griego's due process
> claims are all directed at the act of illegal recoupment, in
> violation of a Medicare statutory provision.  None of Dr.
> Griego's due process claims is tied to the formation of the
> allegedly clandestine agency policy directing others to
> recoup overpayments in violation of § 1395ddd(f)(2)(A).
> Thus Dr. Griego's claims are categorically different from
> those brought in *City of New York*, and this distinction
> significantly affects the analysis of the *Mathews* factors.

*Griego*, 2008 WL 2200052, at *12; see also *City of New York*, 476 U.S. at 483

(explaining that "[t]he claims in this lawsuit are collateral to the claims for benefits

that class members had presented administratively.  The class members neither

sought nor were awarded benefits in the District Court, but rather challenged the

Secretary's failure to follow the applicable regulations.").

The *City of New York* Court also noted the distinction between the plaintiffs'

claims in that case and claims similar to those brought by Griego and Janacek:

> This case is materially distinguishable from one in which a claimant sues in district court, alleging mere deviation from the applicable regulations in his particular administrative proceeding. In the normal course, such individual errors are fully correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation. Because of the agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context. Thus, our holding today does not suggest that exhaustion is to be excused whenever a claimant alleges an irregularity in the agency proceedings.

*Id.* at 484-85. Although *City of New York* refers to cases in which the plaintiff complains of deviation from regulations, its "reasoning also applies to cases, such as this one, where the plaintiff alleges a deviation from a concededly valid statutory provision." *Griego*, 2008 WL 2200052, at *13. Despite Janacek's repeated reference to a clandestine agency policy, his claim is simply "that the defendants deviated from a proper understanding of § 1395ddd(f)(2)(A) in applying this statutory provision to him." *Id.* HHS "should be given the opportunity to review application of [§ 1395ddd(f)(2)(A)] to [the] particular factual context" presented by Janacek. *City of New York*, 476 U.S. at 485. Consequently, Janacek has failed to establish jurisdiction under the clandestine agency policy rubric of *City of New York*.

Janacek has failed to meet his burden on the issue of subject matter jurisdiction, and as a result the defendants' motions to dismiss are granted. Moreover, without subject matter jurisdiction, this court lacks the authority to

provide declaratory or injunctive relief. *Barwood, Inc. v. District of Columbia*, 202 F.3d 290, 294-95 (D.C. Cir. 2000); see also *Tropf v. Fidelity National Title Insurance Company*, 289 F.3d 929, 942 (6th Cir. 2002), *cert. denied*, 537 U.S. 1118 (2003). Thus, the court lacks the authority to issue the requested declaratory and injunctive relief, and Janacek's requests for such relief are denied.

### III.  CONCLUSION

For the foregoing reasons, Leavitt's and Weems' motion to dismiss for lack of subject matter jurisdiction and Mahaffey's, Bahnemann's, and Walker's motion to dismiss for lack of subject matter jurisdiction are **GRANTED**.  Janacek's motion for class certification is **DENIED**, and the motion for leave to file supplemental authority is **GRANTED**.

**SO ORDERED**.

August 27, 2008.

**A. JOE FISH**
**Senior United States District Judge**